UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY P. SURFACE, *et al.*, | : | Case No. 1:15-cv-40 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| OFFICER SCOTT CONKLIN, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (Doc. 5)**

This civil action is before the Court on Defendants' motion to dismiss (Doc. 5),[1] and the parties' responsive memoranda (Docs. 10, 11).

### I. FACTS ALLEGED BY THE PLAINTIFFS

For purposes of this motion to dismiss, the Court must: (1) view the amended complaint in the light most favorable to Plaintiffs; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiffs filed this lawsuit on behalf of their adult son, Caleb Surface. Caleb was shot and killed by Fairfield Police Officer, Scott Conklin, after the Plaintiff-father pulled his own gun on Caleb and called for the police to protect him. Officer Conklin gives an unrebutted account that Caleb threatened him with a gun and when Caleb was told to put his hands up, instead reached into his coat and pulled out an object that turned out to be a cordless phone.

---

[1] Defendants include Officer Scott Conklin (in his individual and official capacity), Chief Michael Dickey (in his individual and official capacity), Officer Todd Adamson (in his individual and official capacity), and the City of Fairfield.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

2

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and shall be dismissed. *Id*. (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III. ANALYSIS

#### A. Federal Claims against Officer Adamson

Officer Todd Adamson was the first responder to the scene following a report of domestic violence from Plaintiff-father Jeffrey Surface at his residence. (Doc. 1 at ¶ 1). "[U]pon Adamson's arrival, the Decedent had already left the Surface residence." (*Id.* at ¶ 14). The complaint sets forth no allegations that Adamson used excessive force against Caleb Surface or that he was present at the location where Caleb was allegedly shot.

Plaintiffs allege that Adamson failed or refused to communicate to the arriving officers that the "weapon" was secured and Caleb was unarmed. (Doc. 1 at ¶¶ 14, 15). Accordingly, Plaintiffs claim that Adamson failed to act in a manner to prevent the use of excessive force and thus may be held liable because Adamson: (1) observed or had reason to know that excessive force would be or was being used; and (2) had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Specifically, Plaintiffs maintain that Adamson had the opportunity and means to prevent Conklin from using excessive force, by communicating via radio that Caleb was unarmed or that the weapon was secured.

3

Plaintiffs argue that "[A]damson knew Caleb Surface was unarmed when Adamson told Plaintiff Jeffrey Surface to secure the weapon." (Doc. 1 at ¶ 14). However, the complaint actually states that "[u]pon Adamson's arrival, the Decedent had already left the Surface residence. Defendant Adamson was met at the door by Surface, who was in possession of his handgun. Defendant Adamson told Surface to 'secure the weapon' and then proceeded to radio to the other officers in the area that the Decedent had left the Surface residence." (*Id.*) The complaint does not allege what Adamson "knew" regarding Caleb's status as armed or unarmed, and, accordingly, such arguments may not be considered. Based on the complaint, it is unclear whether or not Adamson knew that Caleb did not have a weapon. Moreover, despite the fact that the weapon belonging to Jeffrey Surface was secure, it is entirely possible that Caleb could have had another weapon. Therefore, Adamson could not have radioed that Caleb did not have a weapon, because Adamson did not know whether Caleb had a weapon. Plaintiffs cannot speculate as to what Adamson knew or did not know.

Mere proximity to the unfolding events is not a sufficient basis for finding that Adamson participated in a constitutional deprivation. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429. There are no cases in the Sixth Circuit where a nonsupervisory officer who was not present at the scene or did not actively participate in

4

a constitutional deprivation was held liable for the failure to prevent the constitutional violation from occurring. *Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006). Here, it is undisputed that Adamson was not present at the scene where the shooting of Caleb Surface occurred and did not actively participate in the alleged constitutional deprivation. Therefore, Plaintiffs fail to state a federal claim against Officer Adamson.

### B. Claims against Chief Dickey

Chief Dickey was sued in both his individual and official capacity. Defendants maintain that all claims against Chief Dickey should be dismissed, because Plaintiffs have failed to plead any facts that support the assertion that he violated Caleb's rights or that he was responsible for Caleb's wrongful death. The sole allegations in Plaintiffs' complaint are that Dickey is liable under a theory of *respondent superior*.

Liability under Section 1983 "must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To succeed on claims of liability for failure to supervise, a plaintiff must allege facts showing the defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* "At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Stated differently, where individual defendants are alleged to be liable based on the acts of others who they supervise, there

5

must be a "direct causal link between the acts of individual [employees] and the supervisory defendants." *Hays v. Jefferson County*, 668 F.2d 879, 872 (6th Cir. 1982).[2]

Plaintiffs maintain that the claims against Dickey clearly demonstrate a failure to train, supervise, and control the conduct of Defendants Adamson and Conklin. (Doc. 1 at ¶ 38). Plaintiffs do not allege that Dickey was involved personally in the shooting of Caleb Surface, nor that he was the decision-maker with respect to Caleb's shooting. Plaintiffs' reliance on a theory of *respondeat superior* is not permitted. Moreover, Plaintiffs have not alleged any facts to support that Chief Dickey implicitly or explicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct. Since there is no evidence that Dickey engaged in any specific constitutional violations or authorized, approved, or knowingly acquiesced in any unconstitutional conduct, the federal claims against Dickey in his individual capacity cannot stand.

A Section 1983 action against a city official in his or her official capacity "is treated as an action against the City entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). "Under Section 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom." *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008).

Here, the complaint is devoid of any allegations that Caleb's death was the result of an official policy or custom or that Chief Dickey directly participated in or in any way

---

[2] "For individual liability on a failure-to train or supervise theory, the defendant supervisor must be found to have 'encouraged the specific incident or misconduct or in some other way directly participated in it.'" *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

6

encouraged Officers Adamson and Conklin to engage in the alleged unconstitutional conduct. Accordingly, the allegations against Chief Dickey in both his individual and official capacity are insufficient as a matter of law.

### C. Federal Claims against the City of Fairfield

"Under Section 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the…official policy or custom." *Beckett v. Ford*, 384 F. App'x 435, 453 (6th Cir. 2010).[3]

"[O]ur first inquiry in any case alleging municipal liability under Section 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "A municipality can be liable under Section 1983 only where its policies are the "moving force [behind] the constitutional violation." *Id.* at 389. To set forth a cognizable Section 1983 claim against a municipality, a plaintiff must allege that: (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation. *Id.* at 379.

Absent written evidence of the policy, plaintiffs can show the city had a custom of such practices (inadequate training and supervision) by providing "proof of the knowledge of policymaking officials and their acquiescence in the established practice."

---

[3] Under certain circumstances, a municipality can be held liable in civil rights actions under Section 1983 for constitutional violations resulting from its failure to train municipal employees. 42 U.S.C. § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

*Memphis, Tenn. Area Local, Am. Postal Wokers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). The custom "must encompass '[d]eeply embedded traditional ways of carrying out [government] policy.'" *Doe v. Claiborne Cnty. Tenn.*, 103 F.3d 495, 507 (6th Cir. 1997). Where, as here, a plaintiff cannot point to a written or other formally adopted policy, he must show "prior instances of unconstitutional conduct demonstrating that the [city] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Plaintiffs fail to identify policies or practices of the City of Fairfield. Rather, Plaintiffs summarily conclude "[t]he allegations are clear there was an intentional failure to train the officers in question." (Doc. 10 at PageID 76).[4] Plaintiffs maintain that the evidence of alleged individual officer misconduct is sufficient to maintain that there is a City of Fairfield policy condoning such conduct.

> [W]ithout some evidence of municipal policy or custom independent of the police officer's misconduct, there is no way of knowing whether the city is at fault. To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.

---

[4] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). The failure to train must amount to a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* Usually a plaintiff must establish "deliberate indifference" by showing "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 1360. Plaintiffs must allege facts sufficient to show that there was a "clear and persistent pattern of unconstitutional conduct by municipal employees." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014).

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985). Accordingly, federal claims against the City of Fairfield fail as a matter of law.

   **D. Assault and Battery Claims**

  Plaintiffs also allege state law claims for assault and battery. The complaint alleges that "Defendants Adamson and Conklin acted jointly in their response to the 911 call, as well as their interaction with Caleb J. Surface on the evening of January 18, 2014." (Doc. 1 at ¶ 1). "The combined actions of these two Defendants led Defendant Conklin, unlawfully and without cause to shoot and kill Caleb Surface." (*Id.* at ¶ 2).

  Ohio Revised Code Section 2305.111(B) states in pertinent part: "except as provided in section 2305.115 of the Revised Code and subject to division (C) of this section, an action for assault or battery shall be brought within one year after the cause of the action accrues." Pursuant to Ohio Revised Code Section 2305.111(B)(1), the cause of action accrues on "the date on which the alleged assault or battery occurred." Plaintiffs' complaint was filed on January 20, 2015. The cause of action for assault and battery accrued on January 18, 2014. Therefore, Defendants argue that the claims are untimely.

  Plaintiffs maintain that they could not have filed the complaint on January 18 (which was a Sunday) or January 19 (which was Martin Luther King Day), and therefore the January 20, 2015 filing was timely. The Court agrees.

  Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when computing a time period, the last day is included, "but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday,

Sunday or legal holiday." *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12cv1705, 2012 U.S. Dist. LEXIS 175345, at *6 (N.D. Ohio Dec. 11, 2012) (finding that Plaintiffs' FDCPA claims were not barred by the one-year statute of limitations where the statute ran on a Sunday). "[O]nly when the period of time is less than 11 days are intermediate Saturdays, Sundays, and legal holidays excluded. Because the applicable statute-of-limitations period is one year, the intermediate Saturdays, Sundays, and legal holidays are included in computing the limitations period, unless one of those days is the last day of the time period." *Martin v. Louisville Metro Gov't*, No. 3:08cv521, 2009 U.S. Dist. LEXIS 78324, at *10 (W.D. Ky. Sept. 1, 2009).[5]

Accordingly, Plaintiffs' assault and battery claims are not barred by the statute of limitations.

### E. Individual Defendant Immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). Where qualified immunity is raised in a motion to dismiss, "the court must determine only whether the complaint 'adequately alleges the commission of facts that violated clearly

---

[5] Professor Wright has commented that "it is difficult to perceive how a legitimate governmental interest would be prejudiced by application of the Rule 6 exclusion of final Saturdays, Sundays, and legal holidays to federal statutes of limitations." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1163 at 469. *See also Bartlik v. United States DOL*, 62 F.3d 163, 166 (6th Cir. 1995) (if the statute of limitations expires on a weekend or holiday, then it extends to the next business day).

10

established law.'" *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

The individual Defendants maintain that, as employees of their respective political subdivisions, they are immune from this lawsuit. Ohio Revised Code Section 2744.03(A)(6) states that an employee of a political subdivision is immune from suit unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

The plain meaning of this statute is to deny political subdivision immunity conferred by way of the state statute for federal claims. The statute does not prevent a political subdivision from asserting the immunity defense for state law claims. *Ward v. City of Cuyahoga*, 721 F.Supp.2d 677 (N.D. Ohio 2010). In order for an exception to immunity to apply, the acts must be undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 274403(A)(6). Plaintiffs allege no facts that the acts of Adamson or Dickey were done with malicious purpose, in bad faith, or in a wanton or reckless manner.[6] Moreover, Adamson and Dickey were not present at the scene and were not involved in the decision-making process regarding Caleb Surface.

---

[6] "Reckless conduct" is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).

11

Accordingly, Defendants Adamson and Dickey are entitled to immunity for all state law claims asserted against them in their individual capacities.

### F. State Law Claims Against City of Fairfield

Ohio Revised Code Section 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *Rankin v. Cuyahoga Co. Dept. of Children Serv.*, 889 N.E.2d 521, 523-24 (Ohio 2008). Ohio Revised Code Section 2744.02(A)(1) states in pertinent part that "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Before determining whether a political subdivision is entitled to immunity from a civil action, a court must determine whether the political subdivision was engaged in a governmental or proprietary function when the alleged tort occurred. Ohio Rev. Code § 2744.02(A)(1). A "governmental function" is "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection." Ohio Rev. Code § 2744.01(c)(2)(a). Therefore, the allegations against the City of Fairfield form a function for which Fairfield is ordinarily entitled to immunity.

However, the immunity afforded a political subdivision is not absolute, but is subject to the five exceptions to immunity listed in Ohio Revised Code Section 2744.02(B). Therefore, once immunity is established under Ohio Revised Code Section

2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection B apply:

> (1) …, political subdivisions are liable for injury, death, or loss to person or property caused by the negligence operation of any motor vehicle by their employees when her employees are engaged within the scope of their employment and authority.
>
> (2) …political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
>
> (3) …political, subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads[.]
>
> (4) …, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function[.]
>
> (5) …a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code[.]

*Rankin*, 889 N.E.2d at 525.

Finally, under the third tier of analysis, assuming immunity is pierced under one of the five above exceptions, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in Ohio Revised Code Section 2744.03 apply. *Rankin*, 889 N.E.2d at 525. Ohio Revised Code Section 2744.03 states in pertinent part that the agency is immune from civil lawsuit if the following apply:

> (1) The political subdivision is immune…if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.

13

    (2)    The political subdivision is immune from liability if the conduct of the employee involved, other than negligence conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.

    (3)    The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

Ohio Revised Code § 2744.03(A).

None of the exceptions to immunity are applicable. *See, e.g., Smith v. City of Akron*, 476 F. App'x 67, 71 (6th Cir. 2012) (applying Ohio law, recognizing that the provision of police services is a governmental function and that Ohio law immunizes City for tort claims). Accordingly, Fairfield is immune from liability on Plaintiffs' state law claims.

### G.    Plaintiffs' Motion to Amend

In the alternative, Plaintiffs seek leave to amend the complaint. Courts are encouraged to freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

14

While it appears that amendment would be futile, the Court cannot definitively assess futility, because Plaintiffs fail to explain in any detail how they would amend the complaint. Accordingly, Plaintiffs can seek leave to amend, but leave may or may not be granted.

### IV. CONCLUSION

Accordingly, for these reasons, Defendants' motion to dismiss (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART** as explained in this Order.[7] Should Plaintiffs chose to file a motion for leave to amend, they shall do so within 21 days of the date of this Order.

**IT IS SO ORDERED**.

Date: 5/20/15                                                    *s/ Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge

---

[7] Specifically, the Court dismisses all claims as to Defendant Adamson, Defendant Dickey, and Defendant the City of Fairfield.