UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY P. SURFACE, *et al.*, | : | Case No. 1:15-cv-40 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| OFFICER SCOTT CONKLIN, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTIONS *IN LIMINE***

This civil action is before the Court on Defendant's motions *in limine* (Docs. 53, 54, 55, 56), as well as the parties' responsive memoranda. (Docs. 60, 61, 63, 64, 65, 66, 67).

## I. STANDARD

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Generally, "[m]otions *in limine* are…used to…eliminat[e] evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984). "Courts are generally reluctant to grant

1

broad exclusions of evidence *in limine* because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04cv1223, 2014 U.S. Dist. LEXIS 103107, at *5 (July 29, 2014 S.D. Ohio).

Similar to other evidentiary rulings, the decision to grant or deny a motion *in limine* is within the sound discretion of the trial court. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir. 1998). However, "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Rather, motions *in limine* are "generally confined to very specific evidentiary issues of an extremely prejudicial nature." *Brown v. Oakland Cnty.*, No. 14-CV-13159, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015). If the evidence is not plainly inadmissible on all potential grounds, the court's "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

## II.    ANALYSIS

### A. Exclusion of Evidence Relating to Certain Acts Before the Segment in which Conklin Employed Force (Doc. 53)

Defendant moves to exclude opinions and evidence regarding acts other than the moment in time at which Conklin determined that deadly force was necessary, specifically: opinions and evidence that other responding officers unnecessarily created a

2

situation wherein the use of deadly force was justified, evidence regarding policies or practices of the City of Fairfield, or lack thereof, that allegedly contributed to a situation wherein force was justified, and evidence that Conklin improperly pursued Caleb Surface, thereby creating a situation wherein the use of deadly force was justified. Defendant notes that the Sixth Circuit views excessive force claims in segments. *Livermore v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2016).

Defendant argues that any evidence other than whether Conklin's actual use of force was reasonable is irrelevant and inadmissible under Fed. R. Evid. 402. Defendant requests that the Court issue the following order *in limine* and corresponding jury instruction: "The parties may present evidence as to what Officer Conklin reasonably understood about the need for force at the time that shot was fired, including Conklin's knowledge that Surface was possibly suicidal, Surface's prior encounters with law enforcement, that Conklin knew that Surface's father state he almost had to shoot him, Surface saying he had a gun, Surface refusing the order to put his hands up and instead putting his hand inside his pocket." (Doc. 66 at 7-8).

Plaintiffs argue that it is inappropriate to narrow this case to the split second of Conklin's use of force. (Doc. 64 at 2). Plaintiffs contend that the reasonableness of Conklin's use of force will be shown at trial by the witnesses who observed the actions of Conklin, Caleb Surface, the sequencing on the police radio transmissions, and what was found on Caleb Surface and the location of his body. (*Id.* at 4).

3

The Court recognizes that within the Sixth Circuit it is proper to view excessive force claims in segments. However, courts have denied motions *in limine* that seek to prevent parties from presenting evidence of the events that lead to a police shooting because that "would cause the jury to view the shooting entirely out of context and with no way to determine whether Defendant's conduct was reasonable." *Brock v. Harrison*, 2:14-cv-323, 2015 WL 7254204, at * 2-3 (S.D. Ohio Nov. 17, 2015). In *Brock*, the court denied a motion *in limine* to exclude evidence of policy violations because although a violation of internal policies does not establish a constitutional violation, the facts surrounding a chase before police shot a plaintiff, including an officer's actions that may or may not have violated police policies, "are too intertwined with the subsequent use of force for the Court to conclude that they are inadmissible for any purpose." *Id.* at *3. The Court is persuaded by this reasoning.

Here, facts relating to the circumstances before Conklin employed deadly force are too intertwined with Conklin's subsequent use of force for the Court to determine that they are inadmissible for all purposes. It simply is premature at this stage to conclude that Plaintiff cannot present evidence, without any context as to how Plaintiff intends to present that evidence, or how that evidence ties into the circumstances leading up to the shooting. Accordingly, to the extent that Defendant seeks to exclude all evidence of and argumentation related to the events before Conklin employed force, Defendant's motion

(Doc. 53) is **DENIED**.[1]

B. **Exclusion of the Report and Testimony of Plaintiffs' Expert Witness R. Paul McCauley (Doc. 54)**

Defendant moves to exclude the report of R. Paul McCauley (Doc. 28-5), Plaintiff's expert witness, with the exception of Opinion Nos. 2 and 5, and to preclude the testimony of McCauley. Defendant argues that McCauley's testimony should not be permitted because (1) McCauley's opinions are irrelevant because they concern dismissed parties and claims no longer before the Court, (2) McCauley lacks first-hand experience to opine as to the use of force, and (3) one of McCauley's opinions is based on assumptions contradicted by evidence and testimony.

Pursuant to Rule 702 of the Federal Rules of Evidence, a proposed expert's opinion is admissible if the opinion satisfies the three requirements of qualification, relevance, and reliability. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). First, the witness must be "qualified as an expert by knowledge, skill, experience, training or education." Fed. R. Evid. 702. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Rose v. Truck Centers, Inc.*, 388 Fed. App'x 528, 533 (6th Cir. 2010). In turn, testimony is relevant if there is a "'fit' between the inquiry in the case and the testimony," *United*

---

[1] Defendant's motion also seeks to exclude evidence or testimony from Plaintiff's expert, R. Paul McCauley, which argument the Court addresses *infra*.

*States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993), such that the expert will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Pursuant to *Daubert*, the Court must serve as a gatekeeper to ensure that an "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-94 (1993). *Daubert* attempts to strike a balance between liberal admissibility for relevant evidence and the need to exclude misleading "junk science." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009).

Rule 702 provides general standards to assess reliability, including whether the testimony is "based on sufficient facts or data" and "is the product of reliable principles and methods," and whether the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In addition, *Daubert* provided a "non-exclusive checklist" for evaluating the reliability of expert testimony: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *In re Scrap Metal*, 527 F.3d at 529.

This Court is cognizant that "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact," *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998), and that "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 529-30. The focus "must be solely on principles and methodology, not on the conclusions that they

generate." *Daubert*, 509 U.S. at 595. Further, this Court's "role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 advisory comm.'s note, 2000 amend. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Arguments regarding "mere weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). Similarly, attacks on the credibility or accuracy of an opinion do not impugn its reliability; rather, the task of "deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 529-30. "In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

### 1. Qualification of R. Paul McCauley

Defendant argues that McCauley is not qualified to be a non-scientific expert because he does not have a background as a beat cop or working on the ground as a cop for any meaningful amount of time or training. (Doc. 54 at 6). Defendant contends that

McCauley should be precluded from testifying about Conklin's actions or inactions as a beat cop and his use of force.

In the context of non-scientific expert testimony, the gatekeeping function of the court often requires focus on the witness's "personal knowledge and experience" in determining reliability:

> The Court [in *Khumo Tire*] stressed, however, that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." In some cases (even cases involving non-scientific expert testimony), the factors may be pertinent, while in other cases "the relevant reliability concerns may focus upon personal knowledge or experience." "[W]hether *Daubert*'s specific factors are, or are not, reasonably measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."

*First Tennessee Bank Nat. Assoc. v. Barreto*, 268 F.3d 319, 333-334 (6th Cir. 2001).

The Sixth Circuit has specifically held that the reliability of non-scientific expert testimony depends on the facts and circumstances of the case and can be established through the credentials of the expert. *Id.*

McCauley's expert report describes his qualifications as follows:

> I have been an independent consulting criminologist for more than thirty years and continue in that capacity, engaged in criminal justice policy and operational research, including police/law enforcement. My recent work includes providing written testimony to the President's 21st Century Policing Task Force and participating at the Police Executive Research Forum (PERF) conference (Washington, DC) on Re Engineering Police Use of Force Training.
>
> Also, I am Professor Emeritus and former Chairman of the Department of Criminology, Indiana University of Pennsylvania (IUP). The University is a comprehensive, doctoral degree granting

institution with an approximate enrollment of 15,000 students. The Department of Criminology offers bachelors, masters, and doctorate degrees and has about 1,000 criminology majors. I taught and conducted research at all academic/degree levels.

I am a former Pennsylvania municipal police officer and in that capacity I engaged in the arrest, handcuffing, transportation and processing of individuals. I am a graduate of Her Majesty's Home Office Police Detective Training Course (Scotland Yard, England.) For more than twenty-five of my 35 plus year career, I have been a state certified police instructor in Pennsylvania, Kentucky, and Florida. In my academic duties, as well as in my police training duties, I taught the policies and procedures of police operations. Also, I have written or published more than 80 professional papers, books, chapters, and technical reports, many of which address the issues concerning police administration, operations, and policies.

For almost ten years I was a member of the faculty of the Southern Police Institute, School of Police Administration, University of Louisville. In that position I lectured to more than 1,500 police commanders from across the United States, including command officers of the Ohio State Patrol, in the area of police operational policy formulation, which included police use of force. More than 300 of these student officers have become police chiefs. Also, I have received numerous letters and commendations from police executives for my work and contributions to their agencies.

In 1987, I was a Fulbright Scholar, Australia, lecturing to university faculties of law, justice studies, business, and police commanders, and security directors. My lecture area was the relationship/interaction between public police and private security in the prevention of crime.

I hold the designation Fellow American College of Forensic Examiners and have been qualified as a police expert in state and federal courts in more than 30 states, including state and federal courts in Ohio. In 1984, I was one of two finalists interviewed for the position of Commissioner of the Pennsylvania State Police. The Pennsylvania State House of Representatives issued a formal citation recognizing my career and contributions to law enforcement.

(Doc. 28-5 at 1–2).

Defendant relies on *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) to support its argument that McCauley is not qualified to provide testimony. In that case, the Sixth Circuit excluded a non-scientific expert who had provided opinions relating to disciplining police officers and the effect of law discipline on the entire force. *Id.* at 1350. That potential experts qualifications included: a master's degree in education, criminal justice courses, former deputy sheriff, former sheriff, worked for the Justice Department, conducted seminars in police management techniques, and testified in court as a consultant. *Id.* at 1348–49.

The parties do not appear to dispute that McCauley is qualified to opine about police procedures and policies. Instead, Defendant argues that McCauley does not have a background as a beat cop or working on the ground as a cop, so his opinions regarding use of force should be excluded pursuant to *Berry*. Plaintiff points out that Defendant fails to mention that McCauley was indeed a patrol/municipal officer in Pennsylvania during the 1960s. (Doc. 22-3 at PageID# 193).

A review of case law shows that other courts have found McCauley to be qualified to opine about excessive force claims. *See Devine v. Middletown Twp.*, 2016 WL 1728372, *2–4 (E.D. Pa. April 29, 2016). In *Devine*, the court noted that no courts have found McCauley to be unqualified as an expert, but several courts have found McCauley to be qualified "to testify as to whether police conduct in a given situation was in conformance with established law enforcement policies and procedures." *Id*. at 3; *see,*

*e.g.*, *Sargent*, 2015 WL 6447742, at *3; *Grant v. Winik*, 948 F. Supp. 2d 480, 489 (E.D. Pa. 2013), appeal dismissed (Aug. 29, 2013) (determining *sua sponte* that "by virtue of his education and experience, Dr. McCauley is qualified to render an opinion regarding police administration, operations, and policies.") (emphasis added); *Damiani v. Momme*, No.11-2534, 2012 WL 1657920, at *2, (E.D. Pa. May 11, 2012) (Dr. McCauley permitted to testify "regarding the proper way to handcuff individuals so as to prevent injuries, as well as injuries that may result from improper handcuffing and escorting of individuals ..."); *Burger v. Mays*, 176 F.R.D. 153, 157 (E.D. Pa. 1997) (Dr. McCauley permitted to testify as to whether the defendant officer's actions "were in line with standard police procedures.").

McCauley has impressive credentials and experiences in police policies, procedures, and tactics. The Court finds that McCauley is qualified to opine whether Conklin's use of force was in line with standard police practices and procedures. Moreover, Defendant will have opportunities to challenge McCauley's qualifications or methodology via cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Accordingly, the Court finds that McCauley is qualified under *Daubert* to testify regarding use of force in the field.

### 2. Testimony related to Officer Todd Adamson, the City of Fairfield, the Fairfield Police Department, and Fairfield Chief of Police Michael Dickey

Defendant argues that several of McCauley's opinions are irrelevant because they concern dismissed parties and claims no longer before the Court. "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining this action." Fed. R. Evid. 401. Defendant notes that McCauley's Opinion Nos. 1, 9, 11, and 12 solely relate to dismissed claims against dismissed parties and therefore do not make a fact at issue more or less likely. (Doc. 65 at 1–3). Defendant additionally notes that McCauley's Opinion Nos. 8 and 9 concern the efficacy of the investigation conducted by the City of Fairfield and are not relevant to claims in this case. (*Id.* at 5–6).

Courts will exclude expert testimony where it applied only to already dismissed claims. *See In re Whirlpool Corp. Front-Loading Washer Prods. Litig.*, 45 F. Supp. 3d 724, 745 (N.D. Ohio 2014) (excluding expert testimony where the "topics bear on Plaintiffs' now-dismissed failure to warn claim; they have no relevance either to negligent design or breach of warranty").

Upon review of McCauley's opinions, the Court agrees that Opinion Nos. 1, 9, 11, and 12 all relate to claims against parties that have been dismissed, and, therefore, testimony related these opinions is irrelevant and should be excluded.

However, Opinion No. 8 provides that "Conklin's conduct immediately prior to the shooting was contrary to accepted national police practices and procedures, and

12

precipitated his use of deadly force…" (Doc. 28-5 at 17). The Court finds that this opinion is relevant as to whether or not Conklin's use of force was reasonable, and, therefore, testimony related to Opinion No. 8 should not be excluded.

### 3. Testimony relating to Conklin's actions or inactions other than those immediately prior to and contemporaneous with the shooting

Defendant argues that McCauley's Opinion Nos. 4, 6, 7, 8, and 12 should be excluded because a segmentation analysis is required. As reflected *supra*, the Court finds that the circumstances before Conklin's use of force are too intertwined with Conklin's subsequent use of force to limit the admission of evidence to the instant Caleb Surface was shot. Therefore, the Court finds it is inappropriate to exclude McCauley's Opinion Nos. 4, 6, 7, 8, and 12.

### 4. Testimony related to McCauley Opinion No. 10

Defendant argues that McCauley's Opinion No. 10 should be excluded under Fed. R. Evid. 702 and *Daubert* because it is based on the assumption that police officers are untruthful.

McCauley's Opinion No. 10 provides:

> It was unreasonable for PO Conklin to perceive mere hand-in pocket movement, where no object was seen and/or no threat made by Caleb to use a weapon, as a situation justifying the use of force.

(Doc. 28-5 at 27).

In *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001) the Sixth Circuit affirmed the exclusion of plaintiff's expert's testimony because "the jury can make the determination

13

who to believe and who not to believe, using the test that I will describe to them, using their common sense, and they do not need an expert help them to do that." *Id.* at 358.  In that case, the plaintiff's expert sought to testify regarding the credibility of an identification witness.

Here, it is a disputed fact whether Caleb Surface threatened officer Conklin prior to Conklin's use of force.  Reviewing McCauley's opinions, he does not testify to whom the jury should believe and whom not to believe, but instead provides his opinion on various factual scenarios.  For example, in Opinion No. 5 McCauley opines that the use of force was justified if "Caleb had said he had a gun and would kill the officer."  (Doc. 28-5 at 16).  Defendant's argument that McCauley's opinions are based on the assumption that police officers are untruthful lacks merit.  Therefore, the Court denies Defendant's request to exclude testimony related to McCauley's Opinion No. 10.

Accordingly, Defendant's motion to exclude the report and preclude testimony of McCauley (Doc. 54) is **GRANTED in part** and **DENIED in part**, as set forth *supra*.

### C. Exclusion of Evidence Related to Existence of Insurance Coverage (Doc. 55)

Defendant moves to exclude any mention to the jury or presentation of evidence of insurance coverage applicable to Conklin as such evidence violates Fed. R. Evid. 411. Fed. R. Evid. 411 provides:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.  But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

14

Plaintiffs do not object to this motion *in limine* and do not intend to mention the presence of insurance. Accordingly, Defendant's motion to exclude mention or introduction of evidence related to existence of insurance coverage (Doc. 55) is **GRANTED**.

### D. Excluding Mention or Introduction of Evidence Contained in Conklin's Personnel File (Doc. 56)

Defendant moves to exclude and prohibit suggestions, comments, or introduction of evidence contained in Conklin's personnel file, specifically evidence including and underlying a Disciplinary Settlement and Last Chance Agreement between City of Fairfield and Police Officer Scott Conklin, prior disciplinary history of Scott Conklin, constituent commendations or complaints relating to Conklin, and all Employee Performance Appraisals of Conklin. Defendant argues that information contained in Conklin's personnel file is irrelevant and therefore inadmissible pursuant to Fed. R. Evid. 402. Defendant contends that information in the personnel file is irrelevant as to whether Conklin appropriately employed deadly force because evidence in his personnel files contains no reported instances wherein Conklin used excessive or deadly force. (Doc. 56 at 2).

Plaintiffs contend that information in the personnel file is relevant as it demonstrates Conklin's history of poor evaluations and an inability to adhere to policies, rules, and instructions of officers. Plaintiffs argue that information contained in Conklin's personnel file is admissible under Fed. R. Evid. 406, which provides:

15

"Evidence of a person's habit or an organizations routine practice may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit." Plaintiffs contend that information in the personnel file demonstrates that Conklin had a habit of failing to adhere to the policies, rules, and instructions of officers.

A court in this district has found that information in a personnel file was irrelevant to an excessive force claim where the information did not include evidence that the police officer had used excessive force against anyone, but only that the officer had a history of failing to treat coworkers with respect. *Hysell v. Thorp*, 2009 WL 262426, at * 2–3 (S.D. Ohio Feb. 2, 2009). The *Hysell* court found that disrespect to coworkers does not make it more likely that an officer used excessive force against the plaintiff. *Id.* at *3. Other courts have also found materials in a personnel file to be inadmissible in excessive force cases. *See Robinson v. City of St. Charles, Mo.*, 972 F.2d 974, 976 (8th Cir. 1992) ("the officers' personnel files were not admissible for the purpose urged by plaintiffs, and the district court obviously did not abuse its discretion in refusing to admit this evidence"); *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (finding that district court did not err in finding reports of other incidents of excessive force inadmissible under Fed. R. Evid. 404(b)); *Jones v. Police Officer Omarlo Phillips*, 2017 WL 1292376, at *1 (E.D. Wis. Apr. 6, 2017) (granting officers' motion *in limine* to exclude their personnel files).

Here, Plaintiffs have not argued that Conklin's personnel file contains any evidence that Conklin had used excessive force against any individuals. In the Court's

view, information in Conklin's personnel file that may show that he received poor evaluations from his superiors does not tend to make it more likely that he used excessive force against Caleb Surface. Therefore, information in Conklin's personnel file is irrelevant and inadmissible under Fed. R. Evid. 402.

Accordingly, to the extent that Conklin's personnel file does not contain any reports of prior use of excessive force, Defendant's motion to exclude mention or introduction of evidence contained in Conklin's personnel file (Doc. 56) is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, the Court finds:

1) Defendant's motion *in limine* to exclude evidence relating to certain acts before the segment in which Conklin employed force (Doc. 53) is **DENIED**.

2) Defendant's motion *in limine* to exclude the report and preclude testimony of Plaintiffs' expert witness R. Paul McCauley is **GRANTED in part** and **DENIED in part** as follows:

    a. Defendant's motion to exclude testimony related to McCauley's Opinion Nos. 1, 9, 11, and 12 (Doc. 54) is **GRANTED;**

    b. Defendant's motion to exclude the report and testimony of McCauley is **DENIED** in all other respects.

3) Defendant's motion to exclude mention or introduction of evidence related to existence of insurance coverage (Doc. 55) is **GRANTED**; and

4) Defendant's motion to exclude mention or introduction of evidence contained in Conklin's personnel file (Doc. 56) is **GRANTED**.

**IT IS SO ORDERED.**

Date:   11/30/18                                         *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge